IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES W. EDEN

Plaintiff,

vs.  CIV NO. 02 - 0423 M/LFG

LANCE VOSS; PETER MAGGIORE;
ANA MARIE ORTIZ; EBERLINE ANALYTICAL
CORPORATION; AND RINCHEM COMPANY, INC.

Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before me on a Motion to Dismiss or in the alternative a Motion for Summary Judgment by Defendant Rinchem Company, Inc.. Having reviewed the moving papers and accompanying affidavit and exhibit as well as the exhibits attached to the Complaint, I have decided to treat the Motion as a Motion for Summary Judgment. The Motion for Summary Judgment is well taken and is hereby GRANTED as to the Defendant Rinchem Company, Inc. as to Counts II and III. Count IV, which is a actually a request for attorneys fees, is DISMISSED against this Defendant as well since I have determined there is no 42 U.S.C. §1983 claim against Rinchem Company. Count I is not directed against Rinchem Company. Therefore, having disposed of all Counts against Rinchem, the Defendant Rinchem Company,

1



Inc. is hereby DISMISSED from this lawsuit.

## FACTUAL BACKGROUND

This case is one in a series of long-standing disputes between the plaintiff Mr. James Eden and the New Mexico Environment Department and the City of Albuquerque. (Affidavit of Karen Howder Weaver, Asst. City Attorney attached as Exhibit to Complaint). At least three previous lawsuits have been brought in both state and federal court. The disputes between the governmental agencies and Mr. Eden revolve around the storage of metal debris, 55 gallon drums, compressed gas cylinders, tanks, assorted parts, unknown closed containers, drums filled with unknown liquid, cans of waste material and trash on two parcels of land owned by Mr. Eden. This collection of containers is alleged to have been used for the storage of hazardous waste. The parcels of land, 9400 - 9424 Susan NE and 2745 Jefferson NE, are within the city limits of Albuquerque, New Mexico.

Hazardous waste and its storage in New Mexico is regulated by the Hazardous Waste Act, N. M. Stat. Ann. §§74-4-1 et seq. (2002 Supp.). Beginning in 1999, the City of Albuquerque attempted to work with Mr. Eden to clean up the trash and debris on his property. In the course of this clean up work, the City of Albuquerque found evidence of storage of unknown substances which its personnel thought might be hazardous waste. The City reported its findings to the New Mexico Environment Department. The Environment Department contacted Mr. Eden in January and April, 2000, asking him to allow the Department to inspect the properties "in order to verify if the substances stored at your property adequately meet the requirements pertaining to hazardous waste regulations of the State". (Exhibit C attached to

Complaint.) Mr. Eden would not respond to the requests for an inspection. In July, 2000, the Department applied for an Administrative Search and Seizure Warrant. The application, which covered both properties, was filed in the Second Judicial District Court, Bernalillo County and was accompanied by an affidavit from Lance Voss, an Inspection Officer from the New Mexico Environment Department and supporting documents.

Judge James F. Blackmer of the Second Judicial District issued an "Amended Inspection and Seizure Order, Administrative Search Warrant" on July 17, 2002 which was amended nunc pro tunc on July 24, 2000. The Administrative Search and Seizure Warrant allowed Lance Voss, his supervisor, other inspection officers of the New Mexico Environmental Department, and their agents to have access to the properties, and to inspect, sample and photograph the material listed on the Application. In addition, the Warrant allowed the Department to seize any hazardous waste which posed or was likely to pose an imminent hazard to human health and safety. The warrant was to be executed no later than July 27, 2000. Law enforcement officers were to assist the inspection officers during the execution of the warrant.

Rinchem Company, Inc. is a company specializing in environmental remediation and the disposal of contaminated waste products. It had entered into a teaming agreement with Benchmark Environmental under which Benchmark, as the contractor, and Rinchem, as the subcontractor, bid and received a state contract with the New Mexico Environment Department to help the Department remediate environmental conditions involving hazardous waste.

From July 20 to July 24, 2002, Rinchem Company, acting under its state contract with the Department, entered the properties owned by Mr. Eden accompanied by officials of the New Mexico Environment Department. Rinchem did not inspect the Search and Seizure Warrant

3

itself but relied on the representations of the officers of the Department as to the validity, purpose and scope of the warrant. At the direction of the officers of the New Mexico Environment Department, who were present throughout, Rinchem inspected, sampled and tested materials suspected to be hazardous waste, and removed those items stored on the properties which posed or were likely to pose an imminent hazard to human health and safety. Rinchem removed over 1200 containers of wastes and substances from the two properties including petroleum distillates, acetone, methyl ethyl ketone, chlordane, lead paints, flammable paints, hydrochloric acid, mercury, lead acid batteries, PCB blasts, ethylene glycol, potassium hydroxide, asbestos, chlorinated solvents, potassium cyanide and other hazardous substances. A complete inventory of the items removed is attached to the Complaint brought by the New Mexico Environment Department against Mr. Eden in *State of New Mexico, ex rel. Peter Maggiore et al v. James Wallace Eden*. That case, originally filed in the Second Judicial District Court, has been removed to the United States District Court for the District of New Mexico, 01 CV 1299 LH/DJS and is currently in discovery.

Rinchem stored the containers it removed from Mr. Eden's property at its facility in Albuquerque, pursuant to its contract with the New Mexico Environment Department. The Department is seeking to dispose of the alleged hazardous waste stored at Rinchem in an out of state hazardous waste disposal site. The lawsuit brought by the Department against Mr. Eden, *State of New Mexico, ex rel. Peter Maggiore et al v. James Wallace Eden*, seeks injunctive relief requiring Mr. Eden to cease disposing of or storing hazardous waste on his Albuquerque properties, costs to reimburse the Department for its activities in conjunction with the hazardous waste at issue, and civil and punitive damages for violations of hazardous waste statutes and

regulations.

In the present lawsuit, Mr. Eden has charged the various Defendants with violating his constitutional rights guaranteed to him by the Fourth and Fourteenth Amendments. Plaintiff charges that the Administrative Search and Seizure Warrant was issued without probable cause, was overbroad, and gave too much discretion to the agents of the Department. Plaintiff argues that as a result of the allegedly unlawful warrant, the Defendants deprived him of his property without due process of law. Mr. Eden also brings charges of state common law torts of trespass and conversion.

## PROCEDURAL BACKGROUND

This motion was brought as a Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, as a Motion for Summary Judgment. Fed. R. Civ. P. 12(b) states that if a motion asserting a 12(b)(6) defense refers to matters outside the pleadings which are not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as though it were brought under Rule 56 of the Federal Rules of Civil Procedure. All parties must be given a reasonable opportunity to present all material which would be pertinent to such a motion.

The Plaintiff in this case is pro se. In examining his pleadings, I am mindful that the pleadings of a pro se party must be liberally construed and held to a less stringent standard than pleadings drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Plaintiff argues vigorously that the search and seizure warrant which led to this lawsuit was unconstitutional but has failed to respond to the statement of undisputed facts, outlined above in the factual

5

background portion of this opinion. However Plaintiff has presented sufficient material to enable me to make a legal determination of the facial constitutionality and lawfulness of the Administrative Search and Seizure Warrant. Plaintiff attached the Administrative Search and Seizure Warrant, as well as the application and the affidavits in support of the warrant, to his Complaint. There is more than adequate evidence in the record to allow me to examine the underlying application and the Administrative Search and Seizure warrant to determine whether there are material issues of fact at issue which would preclude summary judgment against Rinchem.

## SUMMARY JUDGMENT

Summary judgment is an integral part of the Federal Rules of Civil Procedure which are intended to "'secure the just, speedy and inexpensive determination of every action'." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (quoting *Russillo v. Scarborough*, 935 F. 2d 1167, 1170 (10th Cir. 1991)

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F. 2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

interrogatories and admissions on file', designate 'specific facts showing that there is a genuine issue for trial'." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## QUALIFIED IMMUNITY

Rinchem Company has also raised the affirmative defense of qualified immunity. The Supreme Court has emphasized "the importance of resolving immunity questions at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Discovery is usually stayed until the issue of qualified immunity, which is a legal issue, can be resolved by the trial court. *Snell v. Tunnell*, 920 F. 2d 673 (10th Cir. 1990).

Qualified immunity is an affirmative defense designed to shield government officials who perform discretionary functions from individual liability under 42 U.S.C. §1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *Baptiste v. J. C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir.1998). In this case the defendant Rinchem Company is a private citizen, a corporation, which has a contract to perform a governmental function, the examination, sampling, testing, removal and storage of hazardous waste at the behest of the New Mexico Environment Department. The claims brought against Rinchem in this lawsuit arise solely on the basis of these governmental functions which Rinchem performed pursuant to its contract with the New Mexico Environment Department. In these circumstances, the private citizen, including a corporation, acting under color of state law is entitled to raise the affirmative

defense of qualified immunity. *DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 844 F. 2d 714 (10th Cir. 1988).

Once the defense of qualified immunity is raised the plaintiff must come forward with facts sufficient to establish first, that the defendants violated a constitutional right and secondly, that the contours of that right were sufficiently clear "that a reasonable official would understand that what he is doing violated that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Therefore, the threshold question in this Motion for Summary Judgment is whether the actions of Rinchem Company violated a federal constitutional right of the Plaintiff. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194 (2001), *Gross v. Pirtle*, 245 F.3d 1151(10th Cir. 2001).

I have determined that Plaintiff has failed to establish material issues of fact that if true, would tend to prove that Rinchem violated his constitutional rights under 42 U.S.C. §1983. Plaintiff has not come forward with facts which would tend to establish that the Administrative Search and Seizure Warrant under which Rinchem was acting at all times was unconstitutional or without lawful authority. Therefore Rinchem has not violated the Plaintiff's constitutional rights and the second inquiry into the affirmative defense of qualified immunity is unnecessary.

## DISCUSSION

The New Mexico Hazardous Waste Act, §§74-4-1 et seq. (2002 Supp.), directs any person who stores hazardous waste to permit the Secretary of the New Mexico Environment Department or his authorized representatives to enter the premises where the hazardous waste is

stored, and to inspect and obtain samples of the alleged hazardous waste. §47-4-4.3. Hazardous waste is defined as "any solid waste or combination of solid wastes that because of their quantity, concentration or physical, chemical or infectious characteristics may: ... (2) pose a substantial present or potential hazard to human health, or the environment when improperly treated, stored, transported, disposed or otherwise managed." §74-4-3 (K).

The New Mexico Environment Department sought permission to enter Mr. Eden's properties in order to inspect and sample the materials stored on the property which the Department believed to be hazardous waste. Mr. Eden did not respond to the Department requests. The Department then applied for an Administrative Search and Seizure Warrant in the Second Judicial District in order to enter and inspect the properties, and to take samples, test for hazardous waste and seize that hazardous waste which was likely to pose an imminent hazard to human health and safety. The New Mexico Court of Appeals had previously held that an administrative search warrant was the proper mechanism to enforce the Department's right to inspect a property under the Hazardous Waste Act. *See N.M. Environmental Improvement Division v. Climax Chemical Company*, 105 N.M. 439 (Ct. App. 1986).

The application was accompanied by a sworn affidavit from Lance Voss, an Environmental Specialist for the Compliance and Technical Assistance Program in the Hazardous Waste Bureau of the New Mexico Environment Department , an affidavit by Karen Howden Weaver, an Assistant City of Albuquerque attorney, an inventory compiled in 1999 by Rinchem personnel who had conducted a visual assessment of the property at the request of the City of Albuquerque, and a copy of the certified letter the Department had sent to Mr. Eden asking permission to inspect his property. Mr. Voss stated that the Department had probable

cause to believe that hazardous waste may be located on the two Albuquerque properties and detailed the observations and visual inspections different government personnel or their agents had conducted of the properties which led him to his belief. The Court issued an Administrative Search Warrant on July 17, 2000, amending it nunc pro tunc on July 24, 2000 to 1) show in the title that it was also a Seizure Warrant, and 2) allowing the Department to seize, safeguard and containerize any hazardous waste not only that which poses, but also that which "is likely to pose" an imminent hazard to human health and safety.

Administrative search warrants, such as the one at issue in this case, are non-criminal warrants used by a regulatory agency such as OSHA or the New Mexico Environment Department to enable the agency's officers to inspect a business or area over which it has regulatory power. Administrative search warrants may be issued either for an inspection of a specific business based on a general administrative plan for the enforcement of certain regulations or for an inspection of a specific business on the basis of specific evidence which tends to prove an existing violation of certain regulations. *See, Marshall v. Barlow's, Inc.* 436 U.S. 307, 320-321 (1978). The search warrant in this case was issued on the basis of specific evidence which tended to prove an ongoing violation of certain New Mexico and federal statutes and regulations regarding the storage and disposal of hazardous waste.

An Administrative Search Warrant must be based upon probable cause but "[p]robable cause in the criminal law sense is not required." *Donovan v. Hackney*, 769 F. 2d 650, 652 (10th Cir. 1985). However, as the Tenth Circuit has written, "to say that the same degree of probable cause is not required is not to say that no consideration need be given to the concerns focused on in the criminal setting." *Marshall v. Horn Seed Co.*, 647 F. 2d 96, 102 (1981). The Court

enumerated several factors which should be considered by the judge or magistrate who issues the administrative search warrant in a specific evidence situation. First, the facts offered in the application for the warrant must be sufficient to justify the further investigation or testing. To be sufficient the information must be detailed enough so that the judge can determine independently that a violation of the statute or regulation may exist. Secondly, the application should state the source of the information and how the information was received which led the investigative agency to believe that a violation may exist. Third, the application should state how the investigative agency verified the information it received and whether the applicant was able to make any personal observations of the premises and the alleged violation. Lastly, the application should specify the scope of the search, the proposed time of the search and any other relevant factors related to the search. *Marshall v. Horn Seed*, supra at 102-103.

Taking the four factors into consideration, I have examined the application for the administrative search and seizure warrant. I find that there is ample evidence to hold that probable cause existed to issue the warrant. The facts listed in the application were sufficient to enable the state court judge to conclude independently that a violation of the New Mexico Hazardous Waste Act may be occurring. The application gave details of the history of the state of the properties over an 18 month period, the observations of several agencies regarding the storage of unknown chemicals on the properties and the results of the visual observations of the Rinchem personnel who inspected the property at the request of the Albuquerque Police Department. These details could easily lead the state court judge to conclude that a violation of the statutes regarding storage of hazardous waste may be occurring on Mr. Eden's properties.

The sources of the information were given in the application. Mr. Voss, the New Mexico

Environment Department officer making the application for the warrant stated how he and the Department verified the information received from the Albuquerque Police Department and Rinchem Company. It also included his personal observations and related conversations Mr. Voss had with others familiar with the activities occurring on Mr. Eden's properties. Lastly, the application and the subsequent warrant specified the scope of the search, the time it was to be executed and identified the personnel who would be allowed access to the properties. Probable cause existed to allow the state court judge to issue the Administrative Search and Seizure Warrant.

Plaintiff has also argued that the administrative warrant was overbroad and "gave all discretion to the agents executing the warrant as to what would be searched and/or seized". (Complaint, ¶24). In a criminal case, the Tenth Circuit noted that the Fourth Amendment requires that a search warrant needs to describe things with enough particularity to prevent a general rummaging in a person's belongings. *Davis v. Gracey*, 111 F. 3d 1472, 1478 (10th Cir. 1997). The test is a practical one - did the warrant tell the officers how to separate the items to be seized from the irrelevant items. *Davis*, supra at 148. In this case, the warrant stated that the officers were to inspect, photograph, and sample those items of "soils, solid waste and other waste listed on Exhibit B" and furthermore were allowed to "seize, safeguard and containerize any hazardous waste which poses or is likely to pose an imminent hazard to human health and safety." (Amended Administrative Search and Seizure Warrant). Of course the irony in Plaintiff's argument is that by refusing entry to the New Mexico Environment Department he had forced the agents of the Department to visually inspect the alleged hazardous waste and its containers from afar so that the Department was able to provide the court with only a generalized

description of the items it wished to inspect more closely. For example, Exhibit B, attached to the application for the Administrative Search and Seizure Warrant, lists such items as a "55 gallon drum of unknown liquid (3/4 full)" or "2 metal cans of unknown material, rusted (probably combustible/ flammable)". However, the Administrative Search and Seizure Warrant clearly states that the Department and its agents may only seize that waste which the Department determined to be hazardous waste and secondly, seize only that hazardous waste which poses or is likely to pose an imminent hazard to human health and safety. I find that under the special circumstances of this situation, where the purpose of the search and seizure warrant was to determine if unknown but suspicious looking materials were in fact "hazardous waste" as defined in the state statute, that the Administrative Search and Seizure Warrant described the items to be seized with sufficient particularity to allow the officers and their agents to distinguish between items to be seized from those to be left alone. I do not find the warrant gave unfettered discretion to the agents involved. What the warrant does require is that personnel of the New Mexico Environment Department and their agents make a determination, based on their professional experience, as to what items may be hazardous waste according to the statutory definition, N.M. Stat. Ann. §74-4-3 (K), and to seize those items of hazardous waste which were creating an imminent hazard.

Plaintiff alleges that the Hazardous Waste Act, under which the warrant was issued does not allow the seizure of improperly stored hazardous waste. Plaintiff is mistaken. While the statute specifically allows the inspection and sampling of suspected hazardous waste, N.M. Stat. Ann. §74-4-4.3 (A)(1)(b), it also directs any person owning property where hazardous waste is stored, "to provide access to such property for structures or equipment necessary to monitoring

13

or cleanup of hazardous wastes." [sic] N.M. Stat. Ann. §74-4-4.3 (B)(2) (2002 Supp.). The Department was seeking not only to verify that the waste being stored on Mr. Eden's property was hazardous waste, but also was seeking to clean up the suspected hazardous waste. The application stated that there was "concern that the hazardous waste that may be encountered will be destroyed or removed improperly by Mr. Eden if such hazardous waste is not containerized and stored appropriately by NMED." (¶ 6, Administrative Search and Seizure Warrant). The statute clearly allows the Department to have access to private property where hazardous waste is being stored not only to monitor the hazardous waste but also to "cleanup" the waste. N. M. Stat. Ann. §74-4-4.3 (B). While "cleanup" is not defined by the statute, the common sense definition leads me to conclude that the Department was authorized to seize hazardous waste that was causing environmental problems. I find that the scope of the warrant is supported by the New Mexico Hazardous Waste Act. The Department is authorized by statute to clean up hazardous waste which in this case meant seizing the waste, transporting it to a special storage area and petitioning a court to allow it to dispose the hazardous waste in an out of state hazardous waste disposal site.

Based upon my examination of the Administrative Search and Seizure Warrant, as well as the application and its accompanying affidavits, I find that the Warrant is constitutional. It was supported by probable cause and was not overbroad, specifying the items to be searched, sampled, and seized. The Warrant is also lawful. The New Mexico Hazardous Waste Act fully authorizes the acts specified in the Warrant to be carried out by officers and agents of the New Mexico Environment Department. Therefore, despite Plaintiff's vigorous arguments, I find that Plaintiff has failed to establish that the Defendant Rinchem Company, Inc. violated his federal

constitutional rights. Rinchem was at all times acting pursuant to orders and directions of the agents of the New Mexico Environmental Department which in turn were acting pursuant to a lawful, constitutional, duly issued Administrative Search and Seizure Warrant.

### TRESPASS AND CONVERSION

Count III alleges claims of trespass and conversion against the Defendant Rinchem Environmental Company. Trespass is defined as the unauthorized entry upon the land of another. *North v. Public Service Co. of New Mexico*, 94 N.M. 246 (Ct. App. 1980). Conversion is the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights. *Security Pacific Financial Services v. Signfilled Corporation*, 125 N.M. 38 ( Ct. App.1998). Both require an element of unlawfulness or actions not authorized by law. Defendant Rinchem entered upon Mr. Eden's properties pursuant to a lawful Administrative Search and Seizure Warrant. Likewise, Rinchem's exercise of dominion and control over the approximately 1200 containers of alleged hazardous waste was also lawful and in accordance with a legitimate Administrative Search and Seizure Warrant. Therefore, the Complaint fails to state a claim for either trespass or conversion against Rinchem since all actions complained of against this Defendant occurred in the course of the execution of a lawul warrant. Summary judgment is granted to the Defendant Rinchem on all claims contained in Count III.

### JOHN DOE DEFENDANTS

The Plaintiff has also brought his claims against ten Doe Defendants alleging that the unknown persons were active participants in the incidents described in his Complaint. In

general, courts do not favor the use of "John Doe" to identify Defendants. *Cetenich v. Alden*, 11 F. Supp. 2d 238, 242 (N.D. N.Y. 1998). John Doe Defendants are generally allowed, however, to stand in for real parties until discovery allows the Plaintiff to identify the actual defendants. *Richard v. City of Harahan*, 6 F. Supp.2d 565, 575 (E. D. La. 1998). If the defendants cannot be identified after due diligent discovery, the John Doe defendants shall be dismissed pursuant to Fed. R. Civ. P. 21. *Richard, supra* at 575.

## CONCLUSION

Summary Judgment is GRANTED to the Defendant Rinchem Company, Inc. on Counts II and III. Count IV is DISMISSED against Rinchem Company, Inc. for failure to state a claim upon which relief can be granted. Defendant Rinchem Company, Inc. is hereby DISMISSED from this lawsuit.

_____
SENIOR UNITED STATES JUDGE